UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

KATHRYN FAY, individually and as mother
and natural guardian of K.F., a minor and IAN
FAY, individually and as father and natural
guardian of K.F, a minor,

                        Plaintiff,

       -against-

JUUL LABS, INC., ALTRIA GROUP, INC.,
PHILIP MORRIS USA, INC., and NEW
YORK SMOKE SHOP, INC.,

                        Defendants.

                               Case No. 1:19-cv-10098

----------------------------------------------- ---------x

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants JUUL Labs Inc. ("JLI"),

Altria Group, Inc. ("Altria"), and Philip Morris USA Inc. ("PM USA") (collectively, the

"Removing Defendants") hereby remove this action from the Supreme Court of New York,

County of New York, where it is pending as Case No. 159047/2019, to the United States District

Court for the Southern District of New York.  This Court has original jurisdiction over this

action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between

Plaintiffs Kathryn and Ian Fay and Defendants JLI, Altria, and PM USA, and the amount in

controversy exceeds $75,000, exclusive of interests and costs.  The citizenship of the remaining

Defendant, New York Smoke Shop, Inc. ("Smoke Shop" or the "Resident Defendant"), should

be disregarded because it is not properly joined in this lawsuit.  The Resident Defendant was

fraudulently joined for the sole purpose of destroying diversity, and therefore the claims against

it should be disregarded for purposes of determining diversity jurisdiction.  Alternatively,

Plaintiffs' claims against Smoke Shop are severable from this action under Federal Rule of Civil

Procedure 21, which presents an independent basis for disregarding Smoke Shop's citizenship for diversity purposes.  Grounds for removal are set forth in more detail as follows:

## I.  BACKGROUND

### A.  This Action.

1.     Plaintiffs Kathryn and Ian Fay, individually and as guardian of their minor child, commenced this action on September 17, 2019, in the Supreme Court of New York, County of New York, which is within the district and division to which this case is removed.  As required under 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the Removing Defendants in the underlying state court action is attached as **Exhibit A**.  In this products liability action, Plaintiffs allege that their minor daughter has suffered from "nicotine addiction and other physical and emotional injuries" from her purchase and use of JUUL products.  *See* Compl. ¶ 3.

2.     Plaintiffs' Complaint seeks an unspecified amount of compensatory and punitive damages from all defendants and alleges that JUUL products are defective, both in design and warning, and further asserts claims of negligence, unjust enrichment, deceptive business practices under New York General Business Law § 349 ("NYGBL § 349"), and strict liability. The Complaint asserts claims against entities allegedly responsible for the design, manufacture, labeling, and marketing of JUUL vapor products.  To evade this Court's jurisdiction, however, the Complaint also attempts to state claims against the Resident Defendant, which allegedly sold JUUL products at retail to the public.  Those claims fail both as a matter of settled New York law and undisputed fact, and the Resident Defendant is therefore fraudulently joined.  Consequently, this Court should disregard the citizenship of the Resident Defendant in assessing its subject matter jurisdiction in this case.

3.       Alternatively, Plaintiffs' claims against the Resident Defendant are severable from this action under Federal Rule of Civil Procedure 21, which presents an independent basis for disregarding Smoke Shop's citizenship for diversity purposes.

4.       JLI was served with the Summons and Complaint no earlier than October 1, 2019. This Notice is timely filed under 28 U.S.C. § 1446(b).

5.       All of the Removing Defendants join in and consent to this removal.  The consent of the fraudulently joined Resident Defendant is not required.  *See id.* § 1446(b)(2)(A) ("[A]ll defendants who have been *properly joined* and served must join in or consent to the removal of the action.") (emphasis added); *see also Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 815 (5th Cir. 1993), *cert. denied*, 510 U.S. 868, 870 (1993) (holding that the removing defendant was not required to obtain consent for removal from the allegedly improperly joined defendant); *In re Rezulin Products Liability Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) (same).

**B.       Ongoing Multidistrict Proceedings.**

6.       On July 29, 2019, JLI moved the Judicial Panel on Multidistrict Litigation ("JPML") for an order transferring 10 federal cases presenting common questions of fact and law in six federal district courts and any subsequently filed tag-along cases, including this case, to the U.S. District Court for the Northern District of California for coordination or consolidation (the "MDL Motion").  *In re: JUUL Labs, Inc. Marketing, Sales Practices, and Products Liability Litig.*, MDL No. 2913.  On August 20, 2019, the remaining Removing Defendants joined JLI in seeking the same relief.  MDL 2913, Doc. 17.

7.       On October 2, 2019, the JPML issued a Transfer Order, which transferred lawsuits against the Removing Defendants concerning JUUL products to the Northern District of California, for assignment to the Honorable William H. Orrick III, for coordinated and consolidated pretrial proceedings.  MDL 2913, Doc. 144.  The Clerk of the JPML thereafter

issued seven additional Conditional Transfer Orders to transfer dozens of related actions to the

Northern District of California.  MDL 2913, Docs. 155, 168.  As cases continue to be filed in

federal courts around the country, JLI will notify the Northern District of California that such

"tag-along" actions have been filed, leading to additional transfers.

8.      In view of the substantial factual overlap between this action and the numerous

actions that have already been transferred and consolidated, JLI intends to notify the JPML that

this is a "tag-along" action that also should be transferred to the Northern District of California.

9.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed

with the Supreme Court of New York, County of New York.

## II.  THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1332.

10.      This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332.

There is complete diversity of citizenship between Plaintiff and the Removing Defendants.  The

amount in controversy exceeds $75,000 exclusive of interest and costs.

**A.      There Is Complete Diversity Between Plaintiffs and the Removing Defendants.**

11.      Plaintiffs Kathryn Fay and Ian Fay are citizens of New York.  Compl. ¶ 3.

12.      Defendant JLI is a Delaware corporation with its principal place of business in

California.  *Id.* ¶ 5.

13.      Defendant Altria is a Virginia corporation with its principal place of business in

Virginia.  *Id.* ¶ 6.

14.      Defendant PM USA is a Virginia corporation with its principal place of business

in Virginia.  *Id.* ¶ 7.

15.      Plaintiffs' Complaint names Smoke Shop as a defendant.  *Id.* ¶ 9.  As discussed

below, Smoke Shop is fraudulently joined.  Accordingly, although it is alleged to be a citizen of

New York, Smoke Shop is disregarded for purposes of determining diversity of citizenship.

Alternatively, Plaintiffs' claims against Smoke Shop are severable under Federal Rule of Civil

Procedure 21, such that its citizenship is irrelevant for diversity purposes.

16.     Accordingly, for purposes of diversity jurisdiction, there is complete diversity

between Plaintiff and the properly joined Defendants.

**B.     The Amount in Controversy Exceeds $75,000.**

17.     Under 28 U.S.C. § 1332, diversity subject matter jurisdiction requires that the

matter in controversy "exceed[] the sum or value of $75,000, exclusive of interests and costs."

This requirement is met.  A notice of removal "need include only a plausible allegation that the

amount in controversy exceeds the jurisdictional threshold," *Dart Cherkee Basin Operating Co.*

*v. Owens,* 135 S. Ct. 547, 554 (2014), and a removing defendant must show "by a preponderance

of the evidence that the actual amount in controversy exceeds the minimum jurisdictional

amount."  *Cheung v. Union Cent. Life Ins. Co.*, 269 F. Supp. 2d 321, 323 (S.D.N.Y. 2003).

18.     Here, the Complaint does not include a specific demand for damages.  Upon a full

and fair reading of the Complaint, the amount in controversy exceeds $75,000, exclusive of

interests and costs.  The Complaint seeks damages for fraud, strict products liability, negligence,

unjust enrichment, and a violation of NYGBL § 349.  While Plaintiffs do not specify the amount

of damages sought, they allege that their minor daughter has and will continue to suffer from

"bodily injury; pain and suffering; disability; disfigurement; loss of the capacity for the

enjoyment of life; aggravation of pre-existing conditions; medical and hospital care and

expenses; rehabilitation expenses; and severe emotional distress."  Compl. ¶ 92.  The Complaint

requests monetary relief for "diagnostic testing, medical monitoring, and nicotine cessation

programs."  *Id.* Prayer for Relief.

19.     These and other allegations compel the conclusion that the amount in controversy exceeds the jurisdictional minimum.

20.     The Complaint also seeks attorney fees. *Id.* ¶ 139.  Attorney fees may be used to satisfy the amount in controversy threshold if they are recoverable as a matter of right pursuant to statute or contract. *Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972), *vacated on other grounds*, 409 U.S. 56, 93.  Plaintiff's NYGBL § 349 claim gives such a right of recovery for attorney's fees.  N.Y. Gen. Bus. Law § 349 (h) (McKinney).

21.     Although the Removing Defendants do not concede that Plaintiffs are entitled to damages or fees of any amount, a fair reading of the Complaint describes an amount in controversy exceeding $75,000.

### III.  THE RESIDENT DEFENDANT IS FRAUDULENTLY JOINED.

22.     The Complaint names one New York defendant, Smoke Shop, in addition to the three out-of-state Removing Defendants.  The Resident Defendant, however, is fraudulently joined and its citizenship should be disregarded for the purposes of determining diversity jurisdiction. *See*, *e.g.*, *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998) ("[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy.").

23.     To establish fraudulent joinder of a non-diverse defendant, a defendant must demonstrate either that "there has been outright fraud committed in the plaintiff's pleadings," or that "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461; *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) ("Joinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged.") (internal quotation marks and brackets omitted).

24.     When determining whether a plaintiff can state a cause of action against a non-diverse defendant, courts must evaluate whether the plaintiff's pleadings can state both "a legally sufficient and factually arguable claim for relief against it." *In re Rezulin Prods. Liability Litig.*, 133 F. Supp. 2d 272, 279 (S.D.N.Y. 2001).  A claim is legally deficient "[i]f state case law or legislation removes all reasonable possibility that the plaintiff would be permitted to litigate the claim." *Harris v. Zimmer Holdings, Inc.*, No. 18 Civ. 11271 (PAC), 2019 WL 1873178, at *3 (S.D.N.Y. Apr. 26, 2019) (slip copy).  Likewise, a court must examine the factual basis of the plaintiff's claims against the non-diverse defendant and determine whether the factual allegations are "so clearly false and fictitious that no factual basis exists for an honest belief on the part of plaintiff that there is liability—in short that joinder is without any reasonable basis in fact and is made without any purpose to prosecute the cause in good faith." *Rezulin*, 133 F. Supp. 2d at 281.

25.     The determination of whether a non-diverse defendant has been fraudulently joined is based upon the plaintiff's pleadings at the time of removal.  *See Pullman Co. v. Jenkins*, 305 U.S. 534, 538 (1939) (whether removal was proper is "to be determined according to the plaintiffs' pleading at the time of the petition for removal"); *see also Deming v. Nationwide Mutual Ins. Co.,* No. 03 Civ. 1225(CF), 2004 WL 332741, at *4 (D. Conn. Feb. 14, 2004) ("[I]t is well-settled that the court should analyze the pleadings in effect at the time of removal when undertaking a fraudulent joinder analysis."); *Furchtgott-Roth v. Wilson*, No. 09 Civ. 9877(PKC), 2010 WL 3466770, at *4 (S.D.N.Y. Aug. 31, 2010) (same).  In addition, when evaluating the viability of a plaintiff's claims against a non-diverse defendant, "courts can look beyond the pleadings to determine if the pleadings can state a cause of action."  *In re Consol. Fen-Phen Cases*, No. 03 CV 3081(JG), 2003 WL 22682440, at *3 (E.D.N.Y. Nov. 12, 2003); *see also*

*Pampillonia*, 138 F.3d at 461–62 (looking at affidavits to determine if plaintiff's complaint alleged sufficient factual foundation to support his claims); *Buildings & Const. Trades Council of Buffalo, N.Y. & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 150 (2d Cir. 2006) ("Although this ruling required the district court to look outside the pleadings, a court has discretion to do so when determining whether it has subject matter jurisdiction.").

26.     Here, the Resident Defendant has been fraudulently joined because there is no possibility Plaintiffs can establish a claim against it.  Plaintiffs' "Factual Allegations" contain only conclusory allegations concerning the Resident Defendant, focusing instead on allegations relating to JLI's design of its vapor products, the health effects of nicotine, JLI's purported concealment of the addictive nature of its products, JLI's marketing materials, and the relationship between JLI, Altria, and PM USA.  *See* Compl. ¶¶ 12–98.  Despite the Resident Defendant's clear lack of connection to any of these issues, Plaintiffs seek to circumvent this Court's diversity jurisdiction by asserting claims against the Resident Defendant for strict products liability, negligence, unjust enrichment, violation of NYGBL § 349, and preliminary and permanent injunction.  For the reasons explained below, the mere conclusory references (at most) to the Resident Defendant in the Complaint do not suffice to state a claim against it under any of those five putative causes of action.

A.     **Plaintiff Cannot State a Claim Against the Resident Defendant in Strict Products Liability for Failure to Warn or Design Defect.**

27.     Plaintiffs assert strict products liability claims against Smoke Shop based on its alleged sale of defective JUUL products that injured Plaintiff Kathryn Fay and her minor daughter, K.F.  *See* Compl. ¶¶ 103–17, 145–50.  Plaintiffs advances two theories that the JUUL products were defective:  first, that the JUUL products lacked adequate warnings; and second,

that the JUUL products were defectively designed.  *Id.* ¶¶ 103–17.  Those claims fail against the

Resident Defendant for three main reasons.

- First, the Complaint does not adequately allege that either Kathryn Fay or K.F. have suffered a present physical injury that is necessary to sustain a tort claim under New York law.

- Second, to the extent that Plaintiffs do plead present physical injury, they do not and cannot allege that the injuries were proximately caused by JUUL products that they procured from the Resident Defendant.

- And third, the Resident Defendant did not have a duty to warn Plaintiffs of any dangers of using JUUL products of which Plaintiffs had actual knowledge, or that were open and obvious.

28.     To state a claim for strict products liability under New York law, a plaintiff must

allege that (1) a product "is defective because of a mistake in the manufacturing process or

because of an improper design or because the manufacturer failed to provide adequate warnings

regarding the use of the product," and (2) "the defect was a substantial factor in bringing about

his injury or damages."  *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106–07 (N.Y. 1983)

(citations omitted).  In addition to imposing strict liability on manufacturers, New York law also

extends strict liability to "certain sellers, such as retailers and distributors of allegedly defective

products."  *Sukljian v. Charles Ross & Son Co.*, 69 N.Y.2d 89, 95 (N.Y. 1986).

### i.      No Present Physical Injury is Alleged.

29.     The first reason that Plaintiffs' strict products liability claims fail against the

Resident Defendant is that the Complaint does not identify any present physical injuries that they

purportedly sustained from the alleged use of JUUL products.  "A threat of *future* harm is

insufficient to impose liability against a defendant in a tort context."  *Caronia v. Philip Morris*

*USA, Inc.*, 22 N.Y.3d 439, 446 (N.Y. 2013) (emphasis added).  "The requirement that a plaintiff

sustain physical harm before being able to recover in tort is a fundamental principle of our state's

tort system." *Id.* (citing *Voss*, 59 N.Y.S.2d at 106–07). "The physical harm requirement serves a number of important purposes: *it defines the class of persons who actually possess a cause of action*, provides a basis for the factfinder to determine whether a litigant actually possesses a claim, and protects court dockets from being clogged with frivolous and unfounded claims." *Id.* (emphasis added). Thus, if Plaintiffs cannot identify any *present physical* injuries sustained from the use of JUUL products that they *obtained from* the Resident Defendant, then there is no possibility that they can state a cause of action against the Resident Defendant in strict products liability. *See Caronia*, 22 N.Y.3d at 446.

30.     Here, Plaintiffs' factual allegations fail to identify a single present, physical injury that either Kathryn Fay or K.F. allegedly sustained from their use of JUUL products. Instead, Plaintiffs allege in conclusory and vague fashion that K.F. "is addicted to and has been injured by JUUL," Compl. ¶ 2, and that Kathryn Fay "has suffered from nicotine addiction and other physical and emotional injuries" and that "she is concerned for her heath and future health." *Id.* ¶¶ 3–4. As a matter of established New York law, Kathryn Fay's "concern" does not qualify as a present physical injury giving rise to tort liability. *See Caronia*, 22 N.Y.3d at 446. Thus, the entirety of Plaintiffs' factual allegations concerning Kathryn Fay and K.F.'s alleged injuries amounts to nothing more than conclusory statements that they are addicted to nicotine, and that they have suffered vague, unspecified injuries. In sum: (1) Plaintiffs fail to allege Kathryn Fay's nicotine addiction was *caused* by her alleged use of JUUL products, let alone JUUL products obtained from the Resident Defendant; (2) nicotine addiction, standing alone, is not a "physical present injury"; and (3) Plaintiffs' boilerplate allegations of injuries other than nicotine addiction are not sufficient to circumvent the physical injury requirement.

31.     ***No allegation that addiction was caused by JUUL products***:  Assuming that

Plaintiffs have adequately alleged that Kathryn Fay is addicted to nicotine, *see* Compl ¶ 3,

Plaintiffs do not allege that her nicotine addiction was caused by her use of JUUL products, let

alone JUUL products obtained from the Resident Defendant.  The closest that Plaintiffs come to

such an allegation is their claim that "Ms. Fay did not know how much nicotine JUUL contained

or that JUUL was specifically developed to create and sustain a nicotine addiction when she

began using it," and that "Ms. Fay is addicted to the nicotine contained in JUUL." *Id.*  Again,

that is not enough.  Neither of these claims amount to an allegation that Kathryn Fay is addicted

to nicotine *because of* her alleged use of JUUL products that she obtained from the Resident

Defendant.  If Ms. Fay was already addicted to nicotine when she allegedly began using JUUL

products procured from the Resident Defendant, then her subsequent alleged use of those

products cannot be the cause of her alleged nicotine addiction, nor any harms allegedly

associated with nicotine addiction.  Plaintiffs' Complaint contains no allegations about when Ms.

Fay first began to purchase nicotine products, how often she uses nicotine products, or her

efforts, if any, to stop using nicotine products.  Without these kinds of allegations, Plaintiffs'

Complaint fails to allege a causal link between Ms. Fay's only identifiable alleged injury

(insufficient as it is to state a claim), and the JUUL products that she allegedly obtained from the

Resident Defendant.

32.     ***Nicotine addiction is not a cognizable present physical injury***:  Plaintiffs also fail

to allege a present physical injury for either Kathryn Fay or K.F. because nicotine addiction,

standing alone, is not a present physical injury giving rise to tort liability.  The Complaint

effectively admits as much by failing to identify any injuries aside from Kathryn Fay's

"concern[] for her health and future health."  Compl ¶ 4.  Furthermore, while no New York

courts have yet addressed the issue, courts in other jurisdictions have consistently rejected "nicotine addiction," standing alone, as a physical injury giving rise to tort liability. The California Supreme Court, for example, has explained that "[t]he addictiveness of a product is distinct from its capacity to cause serious physical injury, as demonstrated by the fact that other addictive products are not associated with the same harmful consequences." *Grisham v. Philip Morris USA Inc.*, 40 Cal. 4th 623, 643 (Cal. 2007). As that court explained, "efforts to break [plaintiff's] nicotine addiction do not amount to an allegation that the addiction was causing her appreciable physical harm, nor that the addiction itself was actionable, other than as a cause of economic injury." *Id.* at 641 n.11; *see also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 749 (5th Cir. 1996) (noting that "no court in this country has ever tried an injury-as-addiction claim" and this theory presents an "immature tort"); *Sharples v. United States*, No. 2:18-cv-12880, 2018 WL 5634355, at *2 (E.D. Mich. 2018) ("[P]hysical pain and mental anguish as the result of his untreated drug addiction is insufficient to satisfy the 'physical injury' element of a Federal Tort Claims Act claim brought by a prisoner."); *Mitchell v. Philip Morris Inc.*, No. Civ.A. 00-0092BHS, 2000 WL 1848085, at *7 (S.D. Ala. 2000), *aff'd in part, vac'd in part*, *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309 (11th Cir. 2002) ("Nicotine addiction . . . is not an injury that satisfies the physical injury requirement of [the Prison Litigation Reform Act] because it is not greater than *de minimis*."). Therefore, because the Complaint fails to identify any present physical injury, they cannot state a claim for strict products liability against the Resident Defendant.

33. ***Other vague, boilerplate allegations are inadequate***: Furthermore, Plaintiffs cannot circumvent the physical injury requirement by relying on vague, boilerplate allegations that Kathryn Fay or K.F. have suffered from "other physical and emotional injuries" from their

alleged use of JUUL products.  Compl. ¶ 3.  Yet that is precisely what Plaintiffs attempt to do.

As explained above, Plaintiffs' factual allegations do not identify a single present, physical

injury that was caused by their use of JUUL products obtained from the Resident Defendant.  It

is only later, in reciting their Causes of Action, that Plaintiffs repeat in boilerplate language that

Plaintiff[1] "has in the past and will continue to suffer from bodily injury; pain and suffering;

disability; disfigurement; loss of the capacity for the enjoyment of life; aggravation of pre-

existing conditions; medical and hospital care and expenses; rehabilitations expenses; and severe

emotional distress."  Compl. ¶¶ 109, 117, 124.[2]  However, Plaintiffs' Complaint does not provide

a single link between any of these vague alleged injuries and Plaintiffs' use of nicotine products,

let alone JUUL products procured from the Resident Defendant.

    34.    As explained above, the Complaint is largely predicated on the alleged

addictiveness of JUUL products and JLI's alleged efforts to downplay the alleged risk of

addiction in its marketing.  *See id.* ¶¶ 33–53, 105–07, 114–17, 136.  But apart from nicotine

addiction, Plaintiffs do not allege that Kathryn Fay or K.F. have actually suffered *any* other

adverse effects from their alleged use of JUUL products, and Plaintiffs' Complaint therefore fails

to adequately allege present injury.  New York courts have rejected plaintiffs' efforts, like those

---

[1]  Despite purportedly bringing claims on behalf of three persons—Kathryn Fay, Ian Fay, and
K.F.—Plaintiff's Complaint pleads each injury in the singular.  As a result, the Complaint
repeatedly and unfairly equivocates between the alleged injuries suffered by Kathryn Fay and
K.F., and thereby deprives Defendants, and the Resident Defendant in particular, of fair
notice of the nature of the claims against them.

[2]  In their negligence cause of action, Plaintiffs additionally plead that they "have in the past
incurred, and will in the future incur . . . medical bills and expenses attendant to the condition
of the minor Plaintiff, K.F.," and that Defendants' alleged negligence "caused or contributed
to cause the Plaintiffs, Kathryn Fay and Ian Fay, to be deprived of the support, protection,
services, and society of their minor daughter, K.F."  Compl. ¶¶ 125–26.  However, these
alleged injuries are insufficient to state a claim to the extent that they are merely derivative of
the unidentified alleged physical injuries that, for reasons explained in this Section, cannot
support a claim in tort.

here, to plead around the physical injury requirement by including boilerplate physical injuries that lack a connection to the factual allegations that are the "crux" of their complaint.  *See*, *e.g.*, *Creed v. United Hosp.*, 600 N.Y.S.2d 151, 152 (N.Y. App. Div. 1993) (finding that a complaint failed to state a cause of action in tort where it "allege[d] in boilerplate language that [plaintiff] had suffered 'injuries both internal and external'" because the "crux of the damages sought by the plaintiff[]" were for non-actionable emotional injuries).  Thus, Plaintiffs' mere allegation "in boilerplate language" that Plaintiff "has and is suffering from bodily injury," *id.* ¶ 109, 117, is not sufficient to state a claim in products liability when the crux of Plaintiffs' complaint is about non-actionable nicotine addiction.

35.    In sum, Plaintiffs' failure to allege a present physical injury forecloses any possibility of  claim against the Resident Defendant for strict products liability.

### ii.    No Allegations that any Injuries Were Proximately Caused by JLI Products Purchased from the Resident Defendant.

36.    Second, even if the Court finds that Plaintiffs have adequately pleaded a present physical injury caused by their use of JUUL products (they have not), Plaintiffs' strict products liability claims against the Resident Defendant still fail for a another, independent reason: Plaintiffs do not and cannot allege that either Kathryn Fay or K.F.'s alleged injuries were proximately caused by JUUL products that they *purchased or procured from Smoke Shop*.  *See*, *e.g.*, *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 522 (S.D.N.Y. 2003) (finding fraudulent joinder of local retailer where plaintiff's products liability claim failed to "establish proximate cause" between the alleged injury and the products plaintiff purchased from a particular retailer).

37.    Under New York law, when a plaintiff asserts a strict products liability action against a retailer, the plaintiff must ultimately establish "that it is reasonably probable, not

merely possible or evenly balanced," that the retailer "was the source of the offending product."
*See*, *e.g.*, *Escarria v. Am. Gage & Mfg. Co.*, 690 N.Y.S.2d 86, 87 (N.Y. App. Div. 1999)
(affirming summary judgment where plaintiff "failed to establish that it was reasonably
probable" that the defendant "was the retailing source" of the allegedly defective product);
*Tyminskyy v. Sand Man Bldg. Materials, Inc.*, 92 N.Y.S.3d 409, 411–12 (N.Y. App. Div. 2019)
(granting summary judgment for distributor where plaintiff failed to establish a reasonable
probability that the distributor "was the source of the offending product").  Courts have
consistently found that retailers and distributors are fraudulently joined where a plaintiff fails to
sufficiently allege that the retailer or distributor provided the actual offending product that was
the source of the plaintiff's injury.  *See*, *e.g.*, *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp.
2d 1, 8 (D. Mass. 2001) (finding fraudulent joinder of a regional latex glove distributor where
plaintiff "failed to allege or provide evidence" that he was ever exposed to latex gloves
distributed by the defendant); *Carter v. Hitachi Koki U.S.A. Ltd.*, 445 F. Supp. 2d 597, 602 (E.D.
Va. 2006) (finding fraudulent joinder of a retailer where affidavits established that the retailer
"did not sell the allegedly defective product" that caused Plaintiffs' injury).

38.     Normally, "a products liability action that is brought against retailers, distributors
and manufacturers is premised on an injury that results from the use of a single item that was
purchased from a particular retailer and distributor."  *Pelman*, 237 F. Supp. 2d at 522.  In such
cases, a plaintiff can establish proximate cause and state a claim in strict products liability
against a retailer simply by alleging that they purchased or procured the offending product at that
retailer.  *See*, *e.g.*, *id.* at 522 n.7 (describing a "typical products liability case" implicating a
retailer for the sale of a particular defective product).  Where a products liability action is instead
based on harms that accumulate or emerge over repeated use of an allegedly defective disposable

or consumable product, courts have still insisted that plaintiffs establish proximate cause between their alleged injury and the retailer's sale of the product. *See*, *e.g.*, *id.* at 522 ("In order to establish proximate cause, the injury of over-consumption must somehow be tied to the [retailers].").  Thus, where a plaintiff's alleged injury arises from the repeated use of a consumable or disposable product and that injury already exists *before* a particular retailer or distributor enters into the chain of commerce for that product, the retailer or distributor's later participation in the chain of commerce cannot, as a matter of law, be the proximate cause of the plaintiff's injury.  *See*, *e.g.*, *Mills*, 178 F. Supp. 2d at 7–8 (finding fraudulent joinder of a non-diverse latex glove distributor where the distributor "did not even begin to distribute the latex gloves until after the plaintiff contracted" a latex allergy from his use of the gloves).

39.     Here, Plaintiffs' Complaint does not contain sufficient allegations that Kathryn Fay or K.F. were injured "as a result of New York Smoke Shop, Inc.'s sale of JUUL products." Compl. ¶ 150.  Indeed, after alleging that "Plaintiff has purchased and procured JUUL from New York Smoke Shop, Inc.," *id.* ¶ 9, Plaintiffs' factual allegations do not contain a single further mention of the  Resident Defendant.  It is not until the their causes of action, in the very last paragraph of the Complaint, that Plaintiffs finally allege that they were injured "as a result of New York Smoke Shop, Inc.'s sale of JUUL products."  Plaintiffs thus fail to provide any information about when Kathryn Fay first purchased JUUL products from the Resident Defendant,[3] how often she purchased JUUL products from the Resident Defendant, and whether the Resident Defendant was Ms. Fay's primary source of JUUL products.  These kinds of allegations are necessary to establish proximate cause between Plaintiffs' alleged injuries and the

---

[3]  Plaintiffs' Complaint never alleges that K.F. purchased or procured JUUL products from the Resident Defendant.

Resident Defendant's sale of JUUL products. *See, e.g.*, *Pelman*, 237 F. Supp. 2d at 522 (holding that establishing proximate cause against a retailer of a consumable food product would presumably require "some allegation that plaintiffs ate *primarily* at the particular [retailer]") (emphasis added).

40.      Indeed, other than equivocating between the alleged injuries suffered by Kathryn Fay and K.F., Plaintiffs' Complaint fails to allege *any* connection between K.F.'s injuries and the JUUL products that Kathryn Fay allegedly purchased from the Resident Defendant. *See* ¶ 9. Plaintiffs' Complaint contains absolutely no information about how or where K.F. allegedly obtained JUUL products, and do not allege that K.F. *ever* purchased JUUL products from Smoke Shop.[4]

41.      Furthermore, to the extent that Plaintiffs have identified *any* physical injuries that arose from Kathryn Fay or K.F.'s use of JUUL products (they have not), their failure to allege when such injuries arose forecloses any possibility of establishing proximate cause between those injuries and the Resident Defendant's sale of JUUL products. Again, Plaintiffs' only allegations that either Kathryn Fay or K.F. have suffered a present, physical injury are the boilerplate recitations of harm located at the end of each of Plaintiffs' causes of action. *See, e.g.*,

---

[4] Furthermore, Defendants are investigating the possibility that Kathryn Fay and K.F. began their alleged use of JUUL products *before those products were even sold* by the Resident Defendant. As argued above, Plaintiffs' failure to adequately allege when Kathryn Fay or K.F. first began using JUUL products obtained from the Resident Defendant is grounds in and of itself for finding that Plaintiffs fail to allege proximate cause against the Resident Defendant. To the extent that Kathryn Fay or K.F. began using JUUL products before they were even sold by the Resident Defendant, that would be a further independent ground for finding that Plaintiffs' alleged injuries were not proximately caused by JUUL products obtained from the Resident Defendant. Again, if Kathryn Fay was already addicted to nicotine before she began using JUUL products obtained from the Resident Defendant, then Plaintiffs cannot state a claim in strict products liability against that defendant *See, e.g.*, *Mills*, 178 F. Supp. 2d at 7–8.

Compl. ¶ 109.  But even if the Court finds that those boilerplate allegations are sufficient to allege an injury in tort (they are not), they are still inadequate to allege a specific physical injury that was proximately caused by allegedly defective products that Plaintiffs procured from the Resident Defendant.  Because Smoke Shop's only alleged connection to this case is as a retailer of a consumable product, the timing of Plaintiffs' alleged injuries in relation to their use of JUUL products is central to determining whether those injuries were proximately caused by products obtained *from* Smoke Shop.  *See*, *e.g.*, *Hitachi Koki*, 445 F. Supp. 2d at 602 (finding fraudulent joinder of retailer when the record established that it did not sell the offending product during the time at issue); *Mills*, 178 F. Supp. 2d at 7–8 (finding fraudulent joinder of distributor when plaintiff's injuries arose before the distributor entered the chain of commerce for the offending product).  Thus, because the allegations in the Complaint cannot establish proximate cause between any alleged "bodily injury" and products obtained from the Resident Defendant, Plaintiffs cannot state a claim in strict products liability against the Resident Defendant.

### iii.   The Resident Defendant Had No Duty To Warn Plaintiff About the Dangers of Nicotine Addiction.

42.    Finally, Plaintiffs' strict liability claim for failure to warn against Resident Defendant fails for a third independent reason:  the Resident Defendant had no duty to warn Plaintiffs about the dangers of nicotine addiction.  Under New York law, "[a] manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its products of which it knew or should have known."  *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 297 (N.Y. 1992).  However, "[t]here is no duty 'to warn a consumer already aware—through common knowledge or learning—of a specific hazard.'"  *Schiller v. Nat. Presto Inds*., 639 N.Y.S.2d 217, 218 (N.Y. App. Div. 1996) (quoting *Lancaster Silo & Block Co. v. N. Propane*

*Case Co.*, 427 N.Y.S.2d 1009, 1015 (N.Y. App. Div. 1980)).  Further, "no duty to warn arises

where the product-related danger is obvious, readily-discernible or apparent."  *Id.*

43.     The Complaint does not allege any basis upon which the Resident Defendant had

any duty to warn Plaintiffs that JUUL products contain nicotine, or to warn Plaintiff about

nicotine's "addictive nature."  Plaintiffs allege that JLI "repeatedly represented that a single

JUULpod contains an amount of nicotine equivalent to about a pack of cigarettes."  Compl. ¶ 35.

Although Plaintiffs allege that Kathryn Fay "did not know that JUUL" contained nicotine "when

she first saw the product," that is not an allegation that she did not know about its nicotine

content when she first *used* the product.  Therefore, because Plaintiff cannot reasonably allege

that she was unaware that JUUL products contained nicotine, the Resident Defendant had no

duty to warn Plaintiff about dangers of which she was already aware.  *See Schiller*, 639 N.Y.S.2d

at 218.

44.     Thus, Plaintiff does not and cannot state a claim against the Resident Defendant

for strict products liability under New York law.

**B.     Plaintiff Cannot State a Claim Against the Resident Defendant for
Negligence.**

45.     Plaintiffs likewise cannot assert a negligence action against Resident Defendant

under New York law.  Plaintiffs' negligence claims therefore fail for the same reasons as their

strict product liabilities claims.  *See, e.g., Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 255 (N.Y.

1995) ("[I]n general, the strict liability concept of defective design is functionally synonymous

with the earlier negligence concept of unreasonable designing.") (internal quotation marks and

ellipses omitted) (citation omitted); *Cooley v. Carter-Wallace Inc.*, 478 N.Y.S.2d 375 (N.Y. App.

Div. 1984) ("Where, as here, the theory of liability is the failure to adequately warn, negligence

and strict liability are equivalent.").

46.    "In order to prevail on a negligence claim, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (N.Y. 2016).  Thus, as with strict products liability above, Plaintiffs cannot recover against the Resident Defendant on a negligence theory unless they can establish physical injury and proximate cause.    As explained above, *supra* ¶¶ 29–35, Plaintiffs have not pled a physical injury necessary to recover in tort.  *See Caronia*, 22 N.Y.3d at 446 ("The requirement that a plaintiff sustain physical harm before being able to recover in tort is a fundamental principle of our state's tort system.").  Furthermore, to the extent that they have pled an injury (they have not), Plaintiffs cannot establish proximate cause between those injuries and the Resident Defendant's alleged sale of JUUL products.  *See supra* ¶¶ 36–41; *see, e.g.*, *Pelman*, 237 F. Supp. 2d at 522 (dismissing negligence products liability claim for failure to establish proximate cause between injury and retailer's sale of an allegedly defective product).  All of the arguments presented against Plaintiffs' strict liability claims are herein incorporated with respect to Plaintiffs' putative negligence claim.  Thus, to the extent that Plaintiffs failed to state a claim for strict products liability, they also fail to state a claim for negligence.

47.    Plaintiffs also cannot state a claim for negligence against the Resident Defendant outside of products liability because they have not provided any factual basis to support any such claim.  In asserting Plaintiffs' cause of action for negligence, the Complaint makes only general allegations against all Defendants and does not allege any specific duties owed by, or negligent conduct specifically attributable to, the Resident Defendant.  Instead, the Complaint groups all Defendants together, focuses on JLI's conduct, and alleges in conclusory fashion that all Defendants breached duties to Plaintiffs to "exercise a degree of reasonable care" for activities

relating to the design and marketing of JUUL products.  Compl. ¶¶ 135–40.  This is improper;

"lumping all the defendants together in each claim and providing no factual basis to distinguish

their conduct" fails to give "each defendant fair notice of what the plaintiff's claim is and the

ground upon which it rests."  *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)

(internal quotation marks omitted).  Here, Plaintiffs plainly "lump" the Defendants together

without attributing conduct to Smoke Shop.  As a result, this count is improperly pled, and the

Complaint fails to show any reasonable possibility that Plaintiff can bring such a claim against

the Resident Defendant.  *Id.*

48.     Finally, to the extent that Plaintiffs' negligence claim is premised on products

liability, the Complaint does not allege any basis upon which the Resident Defendant in

particular had any duty to warn Plaintiffs of the alleged dangers of using JUUL products.  Under

a negligence theory of products liability under New York law, a "retailer can be held liable for

the sale of a defective product *or* for failure to warn *only if* it fails to detect a dangerous

condition that it could have discovered during the course of a normal inspection while the

product was in its possession."  *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 420

(S.D.N.Y. 2011) (emphases added) (internal quotation marks and ellipses omitted).  Thus, the

Resident Defendant only had a duty to warn or protect customers of dangers of which it has

special knowledge or that it could have discovered upon reasonable inspection.

49.     Plaintiffs allege that JLI openly advertised that the nicotine content of each of its

"JUULpod" products was approximately equivalent to that of a pack of cigarettes.  Compl. ¶ 35.

Although Plaintiffs also allege that JUUL products are more addictive than those advertisements

suggest, Plaintiffs only allege that JLI (and not the Resident Defendant) "fraudulently concealed

material information about the addictive nature" and the "physiological effects" of JUUL

products.  *Id.* ¶ 33.  There is no allegation that the Resident Defendant knew about the allegedly fraudulently concealed "information," and it has submitted a declaration confirming that it did not have such knowledge.  *See generally* Declaration of Diana Gnyp ("Smoke Shop Decl.").  There is thus no allegation that the Resident Defendant had any reason to believe that JUUL products were more addictive than cigarettes.  Because the Resident Defendant had no duty protect Plaintiffs or warn them about any alleged dangers of using JUUL products that it did not know about and could not have discovered on reasonable inspection, the Resident Defendant cannot be liable to Plaintiffs on a negligence theory of products liability for any defect premised on allegations of JUUL products containing more nicotine or being more addictive than advertised.  *See*, *e.g.*, *Porrazzo*, 822 F. Supp. 2d at 420; *Pelman*, 237 F. Supp. 2d at 523.

50.     Thus, Plaintiff does not and cannot state a claim against the Resident Defendant for negligence under New York law.

**C.     Plaintiffs Do Not State a Claim Against the Resident Defendant For Unjust Enrichment.**

51.     Plaintiffs allege that "Defendants were [unjustly] enriched at the expense of the Plaintiff."  Compl. ¶ 129.  The unjust enrichment claim also fails against the Resident Defendant for several independent reasons:

- First, Plaintiffs fail to allege any conduct attributable to the Resident Defendant;

- Second, the connection between the parties is too attenuated; and

- Third, where a valid contract exists, as here, the quasi-contract equitable remedy of unjust enrichment is unavailable.

52.     To prevail on an unjust enrichment claim under New York Law, "[a] plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be

recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (N.Y. 2011).  "The

essence of unjust enrichment is that one party has received money or a benefit at the expense of

another." *Cty. of Nassau v. Expedia, Inc.*, 992 N.Y.S.2d 293, 296 (N.Y. App. Div. 2014).  The

theory of unjust enrichment "lies as a quasi-contract claim" and contemplates "an obligation

imposed by equity to prevent injustice, in the absence of an actual agreement between the

parties." *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012).  This claim

against Resident Defendant fails for the following reasons.

53.      ***No allegations directed to the Resident Defendant***: First, Plaintiffs make no

allegations against Resident Defendant in support of this claim.  Instead, the Complaint groups

all Defendants together, focuses on JLI's conduct, and alleges in conclusory fashion that all

Defendants sold JUUL products in a manner that was unfair through deceptive actions.  Compl.

¶¶ 128–129.  As discussed above, "lumping all the defendants together in each claim and

providing no factual basis to distinguish their conduct" fails to give each defendant "fair notice

of what the Plaintiffs' claim is and the ground upon which it rests." *Atuahene*, 10 F. App'x 33,

34 (2d Cir. 2001) (internal quotations omitted).  Here, Plaintiff "lumps" the Defendants together

without attributing any specific conduct to Smoke Shop, simply alleging that Defendants'

"unlawful and deceptive actions" caused unjust enrichment.  Compl. ¶ 129.  Because Plaintiff

fails to provide "specification of any particular activities" by the Resident Defendant that

allegedly unfairly induced payment at Plaintiffs' expense, this count is improperly pled and fails

to state a claim. *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).

54.      ***Connection too attenuated***: Second, Plaintiffs' claim fails because the

"connection between the parties is too attenuated." *Mandarin Trading*, 16 N.Y.3d at 182.  A

connection is "too attenuated" where, "under the facts alleged, there are no indicia of an

enrichment that was unjust where the pleadings fail[] to indicate a relationship between the parties that could have caused reliance or inducement." *Id.* Here, Plaintiffs do not allege that Smoke Shop, a retailer without knowledge of the allegedly fraudulent and misleading information about JUUL products, engaged in any fraud or unconscionable conduct that induced K.F. or Kathryn Fay's purchase.[5]

55.   ***Agreement forecloses claim***: Third, "[u]nder New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them … as unjust enrichment … are generally precluded, unless based on a duty independent of the contract." *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011). The quasi-contract remedy of unjust enrichment is not meant to serve as a substitute for products liability or breach-of-warranty litigation. *Id. See also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) (The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter). While Plaintiff's complaint fails to plead any information about his purchase of JUUL Products from the Resident Defendant, if such a purchase was made, it would form a valid contract of sale. It follows that Plaintiffs' claim against Resident Defendant for

---

[5] As noted above, *see supra* fn. 4, Defendants are investigating the possibility that Plaintiffs use of JUUL products began before they were sold by the Resident Defendant. If either K.F. or Kathryn Fay began using JUUL products before they were sold by the Resident Defendant, their relationship would plainly be "too attenuated" to support a claim of unjust enrichment. By the time Plaintiffs would have purchased JUUL from the Resident Defendant, they would have done so based on their prior consumer experience with the product, and not because of any representations concerning the product by the Resident Defendant. But as set forth in the text, the relationship is too attenuated regardless.

unjust enrichment fails because Plaintiffs cannot re-package their products liability claims under the equitable claim of unjust enrichment.

### D.   Plaintiffs' Claim Against the Resident Defendant Pursuant to New York General Business Law § 349 Also Fails.

56.   Plaintiffs further assert that they are entitled to recover against the Resident Defendant pursuant to New York General Business Law ("NYGBL") § 349 on the ground that the "Defendants" engaged in "unfair and deceptive practices" that have deceived consumers like the Plaintiffs.  To state a cause of action under NYGBL § 349, a plaintiff must allege that (1) the defendant engaged in an act that was directed at consumers, (2) the act engaged in was materially deceptive or misleading, and (3) the plaintiff was injured as a result.  *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000).  The claim fails as against the Resident Defendant here for at least three independent reasons:

- First, Plaintiffs do not allege any conduct attributable to the Resident Defendant;

- Second, Plaintiffs have pleaded no facts reflecting Resident Defendant's consumer-facing conduct; and

- Third, Plaintiffs do not allege causation of any injury attributable to the Resident Defendant.

57.   ***No conduct attributable to Resident Defendant***: First, as discussed above, Plaintiffs make no allegations against the Resident Defendant in support of this claim.  Instead, the Complaint groups all Defendants together, focuses on JLI's conduct, and alleges in conclusory fashion that all Defendants engaged in "unfair and deceptive practices" within the scope of NYGBL § 349.  Compl. ¶¶ 146–150.  As noted, "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" fails to give each defendant "fair notice of what the Plaintiffs' claim is and the ground upon which it rests." *Atuahene*, 10 F. App'x at 34.  Plaintiffs do not allege that the Resident Defendant made any

specific representations to K.F. or Kathryn Fay any time, let alone one that was misleading that caused Plaintiffs to be injured as a result.  Instead, Plaintiffs' generalized allegations concerning deception do not apply to the Resident Defendant.  Indeed, the alleged misrepresentations and failures to disclose are based on proprietary information concerning JUUL products that the Resident Defendant never possessed and therefore could not have misrepresented, *e.g.*, Compl. ¶¶ 41–50.  Moreover, such alleged misrepresentations and failures to disclose pertain to activities, such as social media marketing and packaging, in which the Defendant had no involvement, *e.g.*, Compl. ¶¶ 51–65.  As a consequence, the claims asserting a violation of NYGBL § 349 do not contain a single allegation that the Resident Defendant made a deceptive representation to K.F. or Kathryn Fay regarding any aspect of a JUUL product.  The sparse allegations in the Complaint are such that "there is no possibility, based on the pleadings, that [] plaintiff[s] can state a cause of action against the non-diverse defendant." *Pampillonia*, 138 F.3d at 461.

58.     ***No allegations of consumer-facing conduct***: Second, a claim under NYGBL § 349 must be premised on allegations of facts sufficient to show the challenged acts or practices are "directed at the consuming public." *Gaidon v Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343 (N.Y. 1999).  Here, Plaintiffs have pleaded no facts regarding any consumer-oriented conduct performed by the Resident Defendant.  While the Complaint refers extensively to marketing and packaging activities performed by JLI, the Complaint does not demonstrate that the Resident Defendant developed an "extensive marketing scheme that had a broader impact on consumers at large." *Id.* at 344.  In fact, the Resident Defendant did not create any advertising or promotional material for any JUUL product, and any in-store product displays used for JUUL products were provided to Beyond Vape by JLI or a distributor.  Smoke Shop Decl. ¶ 12.

Because Plaintiffs have failed to allege any "extensive marketing scheme" on behalf of the

Resident Defendant, Plaintiffs' claim under NYGBL § 349 fails.

59.     *No allegation of causation*: Third, the failure of the Complaint to allege any

causation of their injury is fatal to Plaintiffs' NYGBL § 349 claim against the Resident

Defendant. While Plaintiffs have vaguely alleged nicotine addiction, proof that a materially

deceptive act or practice "*caused* actual, although not necessarily pecuniary, harm, is required to

impose compensatory damages." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (N.Y. 1999)

(emphasis omitted).  Causation is an "essential" element of any New York General Business

Law section 349 claim.  *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 446 (E.D.N.Y.

2015).  Given the Complaint's lack of detail regarding the Resident Defendant's conduct, none

of Plaintiffs' allegations asserts that either Kathryn Fay or K.F. is addicted to nicotine *because of*

their alleged use of JUUL products that they obtained from the Resident Defendant.  Plaintiffs'

Complaint lacks sufficient allegations to prove a causal link between any potential injury and the

JUUL that they allegedly obtained from the Resident Defendant.  Thus, there is no possibility

under New York law that Plaintiff K.F. can state a claim against Resident Defendant for

violation of NYGBL § 349.

**E.     There is No Cause of Action for Preliminary and Permanent Injunction.**

60.     Plaintiff's Eighth Cause of Action purports to assert a claim against the Resident

Defendant for "Preliminary and Permanent Injunction."  *See* Compl. ¶ 140–44.  "There is no

cause of action for an injunction under New York law; a plaintiff must allege a substantive cause

of action that provides 'the basis of an award of injunctive relief.'"  *Wilkov v. Ameriprise Fin.*

*Servs., Inc.*, No. 15 CV 7937-LTS, 2017 WL 1200899, at *3 (S.D.N.Y. Mar. 30, 2017) (quoting

*Held v. Macy's, Inc.,* 901 N.Y.S.2d 906 (Table), at *19 (N.Y. Sup. Ct. 2009)) (finding fraudulent

joinder of a nondiverse defendant where plaintiff's complaint "did not proffer any substantive

cause of action in connection with its request for injunctive relief").  Accordingly, despite its label, this section of the Complaint does not state an independent cause of action.  *See Wilkov*, 2017 WL 1200899, at *3.  Because there is no independent cause of action for an injunction under New York law, there is no possibility that Plaintiff can state a claim against the Resident Defendant for a permanent injunction.

61.     Plaintiff can only seek an injunction against the Resident Defendant as the relief for a substantive cause of action.  As explained above, Plaintiff has not and cannot state a cause of action against the Resident Defendant for any of his substantive claims for relief.  Therefore, Plaintiff is not entitled to any injunctive relief against the Resident Defendant even as a remedy.

**F.     Plaintiff Lacks Standing to Assert Claims Against the Resident Defendant in State Court that Are Premised on the Alleged Design, Marketing, or Sale of JUUL Products to Minors.**

62.     Many of the claims against the Resident Defendant also fail for the independent reason that Plaintiffs lacks standing to assert them in state court.  Counts 3, 4, 5, and 7 of the Complaint purports to allege claims against the Resident Defendant that are premised on the alleged design, sale, or marketing of JUUL products to minors,[6] but Plaintiffs nowhere allege that Kathryn Fay purchased, procured, or used JUUL products as a minor (let alone from the

---

[6]  *See*, *e.g.*, Compl. ¶ 107 ("Defendants marketed their products to minors and made them available in youth-friendly colors and flavors.  Defendants also designed their products to be more palatable to youth . . . by increasing JUUL's inhale-ability and increased the level of nicotine that is absorbed by users."); *id.* ¶ 116 ("Defendants knew or had reason to know that youths and adolescents would not fully realize the dangerous and addictive nature of JUUL products."); *id.* ¶ 119 ("Defendants had a duty and owed a duty to Plaintiff to . . . ensur[e] that JUUL marketing does not target minors; ensur[e] that JUUL devices and JUULpods are not sold and/or distributed to minors and are not designed in a manner that makes them unduly attractive to minors."); *id.* ¶ 136 ("Defendants have engaged and continued to engage in unfair, unlawful, and deceptive trade practices . . . In particular, Defendants have knowingly developed, sold, and promoted a product that contained nicotine levels in excess of cigarettes with the intention of creating a fostering long-term addiction to JUUL products for minors.").

Resident Defendant),[7] or that she or other Plaintiffs suffered harm as a result.  In short, Plaintiffs have not alleged that they have a particularized injury within the zone of interest of any of these statutory or common law claims for relief against the Resident Defendant.  *See Caprer v. Nussbaum*, 825 N.Y.S.2d 55, 63 (N.Y. App. Div. 2006) ("[A] plaintiff, in order to have standing in a particular dispute, must demonstrate an injury in fact that falls within the relevant zone of interests sought to be protected by law.").

63.     Under New York law, "[w]hether a person seeking relief is a proper party to request an adjudication is an aspect of justiciability which must be considered at the outset of any litigation." *Dairylea Coop., Inc. v. Walkey*, 38 N.Y.2d 6, 9 (N.Y. 1975).  As under federal law, "[a] plaintiff generally has standing only to assert claims on behalf of himself or herself." *Caprer*, 825 N.Y.S.2d at 62; *see also Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("[A] litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.").

64.     New York's two-part test for standing requires a plaintiff to establish (1) "that he or she will be harmed by the challenged action, and that the injury is more than conjectural"; and (2) that the asserted injury "fall[s] within the zone of interests or concerns sought to be promoted or protected by the statutory provision or recognized common-law relationship pursuant to which a defendant has acted." *Caprer*, 825 N.Y.S.2d at 62.

65.     Under this test, Plaintiffs fail to establish that they have standing to assert claims against the Resident Defendant for three reasons:

---

[7] Again, here Plaintiffs' Complaint pleads in the singular that "*Plaintiff* has purchased and procured JUUL from the New York Smoke Shop, Inc."  Defendants understand Plaintiffs to be alleging that Kathryn Fay purchased JUUL products from Smoke Shop.  There are no specific factual allegations in Plaintiffs' Complaint that K.F. purchased or procured JUUL products from Smoke Shop.

- First, Kathryn Fay was not a minor at when she allegedly purchased or procured JUUL products from the Resident Defendant;

- Second, for several causes of action, Plaintiffs fail to allege any conduct attributable to the Resident Defendant with respect to the alleged design, sale, or marketing of JUUL products to minors; and

- Third, to the extent that Plaintiffs identify any such conduct of the Resident Defendant, their Complaint does not plead an injury that falls within the zone of interests of their asserted claims for relief.

66.    ***No pleading of Plaintiffs' relevant activities as a minor***:  First, Plaintiffs lack

standing to assert claims against the Resident Defendant on behalf of minors because they fail to

plead that Kathryn Fay or K.F. purchased or procured JUUL products from the Resident

Defendant or relied on JUUL marketing from the Resident Defendant as a minor.  Although

Plaintiffs do not plead Kathryn Fay's age, nor allege when she first purchased JUUL products

from the Resident Defendant, common sense dictates she was not a minor when she allegedly

purchased such products.  At the time that Plaintiffs filed their Complaint in September 2019,

Kathryn Fay's daughter, K.F., was already fifteen years old.  *See* Compl. ¶ 2.  At all relevant

times, the legal age to purchase tobacco products in New York state was eighteen years old.[8]

Accordingly, common sense dictates that Kathryn Fay was not a minor when she allegedly

purchased or procured JUUL products from the Resident Defendant.  Thus, Plaintiffs have not

pleaded that the Resident Defendant ever sold JUUL products to a minor.  Therefore, Plaintiffs

have no standing to assert any claims against the Resident Defendant for conduct related to the

design, sale, or marketing of JUUL products to minors, regardless of the legal theory of liability.

---

[8]  On July 16, 2019, Assembly Bill A558A went into law, raising the legal age to purchase and consume tobacco products to twenty-one, effective November 13, 2019.  *See* 2019 N.Y. Sess. Laws ch. 100.

67.     ***No conduct attributable to the Resident Defendant***:  Second, to the extent that

the claims are based on the design, sale, or marketing of JUUL products to minors, Plaintiffs also

lack standing to assert their negligence and NYGBL claims against the Resident Defendant

because the Complaint does not identify any conduct attributable to the Resident Defendant that

satisfies the first prong of New York's standing test.  *See Caprer*, 825 N.Y.S.2d at 62 ( plaintiffs

must first "establish that he or she will be harmed *by the challenged action*, and that the injury is

more than conjectural") (emphasis added).  As explained above, Plaintiffs do not allege any

specific negligent or deceptive business conduct attributable to the Resident Defendant, let alone

any conduct related to the alleged design, sale, or marketing of JUUL products to minors.

Therefore, because the Complaint fails to allege any injury connected to Resident Defendant's

conduct with respect to those claims, Plaintiffs lack standing to assert those claims against the

Resident Defendant.

68.     ***Any potential injury is outside "zone of interest"***: Finally, to the extent that the

court finds that Plaintiffs do allege conduct attributable to the Resident Defendant, Plaintiffs still

lack standing to assert those claims because any injury that Plaintiffs suffered related to that

conduct is outside the "zone of interest" of each of their claims for relief.  *See Caprer*, 825

N.Y.S.2d at 62.  As explained above, *supra* ¶¶ 29–35, the Complaint fails to adequately plead a

present physical injury.  To the extent that Plaintiff does plead an injury, the Complaint does not

contain any link—let alone a plausible link—between any of those injuries and any alleged

conduct attributable to the Resident Defendant related to the design, sale, or marketing of JUUL

products to minors.  The design, sale, or marketing of products to third persons is too attenuated

to support a claim to recover for an alleged physical injury under any of Plaintiffs' causes of

action.  Simply put, Plaintiffs have not and cannot demonstrate any way in which the design,

sale, or marketing of JUUL products to other persons, minors or otherwise, has injured them in a way that entitles them to any claim for relief.  Therefore, Plaintiffs lack standing to pursue those claims.

*     *     *

69.     For all these reasons, there is no possibility that Plaintiffs "can state a cause of action against the non-diverse defendant in state court."  *Pampillonia*, 138 F.3d at 461.  Because there is no possibility that Plaintiffs can recover against the Resident Defendant, its joinder was fraudulent, and its citizenship may be disregarded for jurisdictional purposes.

## IV.  IN THE ALTERNATIVE, THE RESIDENT DEFENDANT SHOULD BE SEVERED UNDER FED. R. CIV. P. 21.

70.     Alternatively, Plaintiffs' claims against Resident Defendant are severable from this action.  This presents an independent basis for disregarding Smoke Shop's citizenship for diversity purposes.

71.     Federal courts, relying upon Fed. R. Civ. P. 21, routinely retain jurisdiction over cases where non-diverse defendants are neither necessary nor indispensable under Rule 19.  This is particularly true when, as here, the plaintiffs can obtain full recovery from the defendants that remain in the federal case after removal, the plaintiffs retain a remedy against the non-diverse defendant in state court, and overall judicial economy is served by removal.

72.     Rule 21 vests courts with the power "to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."  *Highland Capital Mgmt. LP. v. Schneider*, 198 F. App'x 41, 45 (2d Cir. 2006) (quoting *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 832 (1989)).  Further, a court applying this rule may dismiss a dispensable party whose presence spoils diversity jurisdiction.  *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009).  As such, the Rule is viewed as "a grant of discretionary

power to the federal court to perfect its diversity jurisdiction" by dropping such parties, provided

that they are not indispensable to an action under Rule 19. *Kirkland v. Legion Ins. Co.*, 343 F.3d

1135, 1142 (9th Cir. 2003) (internal quotation marks omitted). *See also Payroll Mgmt., Inc. v.

Lexington Ins. Co.*, 815 F.3d 1293, 1298 n.8 (11th Cir. 2016) (stating that the Rule permits

district courts to drop dispensable non-diverse parties "when necessary to establish federal

subject-matter jurisdiction").

73.     Applying these principles, courts within this Circuit have severed or dismissed

dispensable, non-diverse defendants under Rule 19, thereby preserving the Court's diversity

jurisdiction. *See*, *e.g.*, *Highland Capital Mgmt. LP.* 198 F. App'x at 45;  *Walpert v. Jaffrey*, 127

F. Supp. 3d 105, 120 (S.D.N.Y. 2015); *Chamarac Properties, Inc. v. Pike*, No. 86 CIV. 7919

(KMW), 1992 WL 332234, at *18 (S.D.N.Y. Nov. 2, 1992); *Call Ctr. Techs., Inc. v. Grand

Adventures Tour & Travel Publ'g Corp., Inc.*, No. 3:03CV01036(DJS), 2009 WL 10687800, at

*8 (D. Conn. Nov. 19, 2009).

74.     To determine whether the claims against a resident defendant should be severed, a

court first decides whether the party is "necessary" under Rule 19(a), i.e., whether that

defendant's absence prevents the plaintiff from obtaining complete relief from the remaining

defendants. *See*, *e.g.*, *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 89 (2d Cir.

1990); *CP Solutions PTE, Ltd.*, 553 F.3d at 159.  If (and only if) the resident defendant is

necessary under Rule 19(a), the court considers the indispensable factors outlined in Rule 19(b):

(1) whether a judgment rendered in a person's absence might prejudice that person or parties to

the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in

the person's absence would be adequate, and (4) whether the plaintiff would have an adequate

remedy if the court dismissed the suit. *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir.

2000).

75.     Here, the Resident Defendant is not a necessary party because complete relief can

be accorded among the remaining parties.  Throughout the Complaint, Plaintiffs allege in

conclusory fashion that all Defendants are together liable under theories of negligence, strict

liability, unjust enrichment, or violations of NYGBL § 349.  "[B]ecause none of the allegations

in the Complaint are attributable only to [Resident Defendant]," compete relief can be accorded

without Beyond Vape in the case. *Walpert*, 127 F. Supp. 3d at 121.  Thus, based on the

allegations in the Complaint, if Plaintiffs were to prevail on their claims, they could be accorded

complete relief for their injuries from the Removing Defendants.  *See*, *e.g.*, *Samaha v.

Presbyterian Hosp. in N.Y.*, 757 F.2d 529, 531 (2d Cir. 1985) (per curiam); *Bassett v.

Mashantucket Pequot Tribe*, 204 F.3d 343, 358 (2d Cir. 2000).  Because the Resident Defendant

is not a necessary party, the court may dismiss it from the present case to preserve its diversity

jurisdiction. *CP Sols. PTE, Ltd.,* 553 F.3d at 159.

76.     Even if the Resident Defendant is deemed "necessary" under Rule 19(a), it is not

an indispensable party based upon a full consideration of the Rule 19(b) factors, and may

therefore be dismissed under Rule 21.  *Id.*  Taking each of the four steps in turn, first, judgment

rendered in the Resident Defendant's absence would not prejudice the Plaintiffs.  Plaintiffs'

theory of liability against JLI depends on the design, manufacture, marketing, and promotion of

JLI products.  *See* Compl. ¶¶ 41–65.  By contrast, Plaintiffs allegations' against the Resident

Defendant apparently concern the sale of JLI products in a single smoke shop, but lack any

further specificity.  Setting aside this lack of detail, the resolution of a claim against JLI would

not necessarily resolve Plaintiffs' claim against the Resident Defendant because the claims

against the two differ.  *See*, *e.g.*, *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 706 (D. Md. 2015).  They will depend on what specific advertisements and representations that each made, independent of one another.

77.     Second, Plaintiffs retain an adequate remedy if the court dismissed the Resident Defendant from this action, namely, suit in state court.  *2 Montauk Highway LLC v. Global Partners LP*, 296 F.R.D. 94, 102 (E.D.N.Y. 2013).

78.     Third, failing to dismiss the Resident Defendant would severely prejudice JLI and the other Removing Defendants.  As noted above, the Removing Defendants are now engaged in an consolidated litigation that includes nearly 100 federal cases in the Northern District of California.  *See supra* ¶¶ 7-8.  Given the substantial factual overlap between this action and the numerous actions that have already been approved for consolidation, it is very likely that this case will be transferred to the Northern District of California if it remains in federal court.  Transfer and coordination in these proceedings would (1) avoid substantial and duplicative discovery burdens, and (2) eliminate the risk of inconsistent pretrial rulings on discovery, dispositive motions to dismiss, class certification, summary judgment, and other pretrial matters.  By contrast, if the Removing Defendants are forced to litigate this single dispute in New York State Court, they would not benefit from the myriad benefits of the consolidated litigation.

79.     Similarly, under Rule 19, the Court must consider the interest in "complete, consistent, and efficient settlement of controversies."  *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968).  Here, dismissing the Resident Defendant and allowing Plaintiffs' claim against the Removing Defendants to be resolved in the MDL in the Northern District of California would best serve the value of consistent and efficient settlement of

controversies.  The parties will be able to resolve Plaintiffs' claims and the Removing

Defendants' defenses in a consistent and efficient manner in the MDL.

80.    Accordingly, the Resident Defendant is neither necessary nor indispensable under

Rule 19, and Plaintiffs' claims against it should be severed under Rule 21.  Doing so leaves

complete diversity of citizenship, since Plaintiffs are New York citizens and the Removing

Defendants are not, and the amount in controversy requirement is satisfied.  *See* 28 U.S.C. §

1332(a).

81.    The Removing Defendants reserve the right to amend or supplement this Notice

of Removal.

**WHEREFORE**, Removing Defendants pray that the filing of the Notice of Removal,

and the giving of written notice thereof to the Plaintiffs, and the filing of a copy of this Notice of

Removal with the Clerk of the Supreme Court of New York, County of New York, shall effect

removal of said suit to this Court.

Respectfully submitted this 30th day of October 2019.

By:    /s/ Joseph Evall

Joseph Evall
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel:  (212) 351-5243
jevall@gibsondunn.com

*Attorneys for Defendant JUUL Labs, Inc.*